Please record my name is Alan Hyman. I'll be arguing approximately 3 1⁄2 to 4 minutes of the 10 minutes allocated with counsel, Mr. Chodos, for the remaining amount. It's an abuse of discretion. It's an abuse of discretion because we have a preliminary injunction's and extraordinary, extraordinary relief when you have ongoing business activities. And so it is subject to very onerous provisions, onerous conditions, subject to abuse by counsel, writing checks. It's all nice words, but in practice, the Vista Court has been nothing if not ready to come in and answer questions and make allocations and approve payments. I've been really surprised at the Court's patience in this case, but it just goes to show we have some excellent district judges, this certainly being one among them. What exactly is your beef? Exactly our beef, of course, is the fact that because of the injunction, we've lost two businesses. To preserve the status quo, which was the intent, we have, in fact, Worldwide Network, Inc., value of $6, now being sold for $2, Bella Zera, value is now out of business. And, in fact, what happened, that's the beef. Because of the injunction? Because of the injunction, yes. What do you base this on? I mean, you just told me something. How do I know it's true? Well, we filed a request to take judicial notice last week that we are selling all the assets and the value of the assets we are selling is ---- How do we take judicial notice of that? Judicial notice of the application to the court and the application to sell the assets. I'm sorry. You mentioned two points, and you've been discussing one, and I want you to answer this one. Yes. But there are two points. You've got to show one and the other. I had a third point. Go ahead. Can I just ask you, if we take judicial notice of the fact that you filed an application, that still doesn't permit us to take judicial notice of the facts contained in that application, does it? Absolutely correct. Absolutely correct. Of course. So then you have no proof. Well, actually, you have some proof, and you have some proof in the papers. No. I think Judge Wallinson had it exactly right. No proof. But you have proof in the papers submitted with the index about the loss of business, the 110 bounced checks by attorney's service of filing fee checks bounced. How do we know those things are not lies? Well, because there's no --"then how do we know that?" No. I asked the question. Oh. You give me the answer. Yes. I just asked the question, how do we know these are not all lies? Well, I guess the one weighs the evidence. There's no adverse evidence to it. Should we ask the jury to do it here? What does the jury say? Yes. What does the jury say? Well, the papers show that the Kramers ---- You have no findings. You have no ruling from the trial judge. We don't do facts here. Ah, yes. There's no findings. There's no supporting evidence from the trial judge that any money, any money from the judgment debtors went in to Anna and Noah Kramer Trust. Anna and Noah Kramer is an insurance trust, 1992. They buy 13 insurance policies. It vests upon their death. There's not one showing of a transfer to the trust. But we freeze the assets of the trust, which owns businesses, and the businesses, no proof, go under. But what ---- but if you're going to freeze assets, it's not like ---- it's not like Judge Nelson says, in, of course, a famous case, the Philippines and the Marcoses, the Philippines produced uncontroverted evidence indicating the Marcoses had established Swiss bank accounts and aliases and transferred funds. That's a finding. Counsel says you're referring to me. Let me ask you a question. Yes, of course. I'd be delighted, Your Honor. Thank you so much. Millions of dollars disappeared from the brokerage account's wife while Fidelity's initial suit was pending. And why doesn't this give rise to the inference that those assets were transferred to avoid Fidelity's judgment? Under the Philip case, we can use circumstantial evidence, and here we have evidence that, especially for a preliminary injunction, what is your response? The response is, could well be. Assets were transferred out of the Judgment Debtors Trust and have disappeared on the There's no evidence. It went into their father and mother-in-law's trust, and there's no evidence it went into any of the father and mother-in-law's trust. And, in fact, their expert says on October 26th, he says, I have no evidence it goes into the trust. So if you why, maybe it went into the Kaczynski trust. He just says, it's not here. It must have gone into that trust because that's the in-law, the wealthy in-laws have lots of money. So let's go after their trust. Let's go after Judge Kaczynski's trust. It could have equally been. There's as much evidence in the record to show it went to Judge Kaczynski's trust as it did to the grandparents' trust, who are independently wealthy people, who have these trusts from 88 and 92. So how can you do that? Something looks wrong here when you have literally hundreds of accounts, trusts, credit cards, and other investment vehicles since 1999, unless that's done to avoid payment of the judgment. That's the judgment debtors, not the businesses owned by the trusts. If you – and then if you have four years of investigation and the judgment, the – I don't want to take up too much of my time. This is all very interesting. The district court looked at all of this. It made what had to be, necessarily, an off-the-cuff determination based on a tax preliminary injunction. You have a bond now. Bond only is to one company, not to the others, not to the companies – other companies. The bond is limited only to Bellazura, the factory in China. And even more important, you have a very solvent plaintiff, very solvent. For what? If there are damages from the – from a wrongfully issued injunction, you know you can collect. You remember the Nintendo case? Remember? Wrongfully issued injunction, $14 million worth of damages assessed against Nintendo by Galoob. It's – you know, it's just the way it goes. We have – this is why we have hardworking district judges to make these assessments. And we test by abuse of discretion. We test by substantial evidence. And this, necessarily, is one of the situations where there's going to be uncertainty. It's the nature of our enterprise. But why don't we let Mr. Chodos speak some? Mr. Chodos Yes, that's what I would like. Thank you so much. If he chooses. Mr. Chodos If I could reserve until the end, Your Honor, my four minutes, my answer. You have two minutes and 23 seconds left, and this may be the end, unless counsel believes that there's something that – that she needs to say that wasn't adequately covered in her briefs. Anything you heard this morning that you think isn't adequately covered by your very fine briefing? Thank you, Your Honor. No, I believe the briefs do cover it. But if I may respond before – Thank you. Thank you. KJSR, you stand submitted. Did he? I'm sorry. I thought you had – Mr. Chodos, you are a long-time practitioner here, so we'll make an exception. But normally when you pass, you pass. Go ahead. Go ahead. Two minutes and 23 seconds. Thank you, Your Honors. Let me say three things. First of all, we understand that injunctions are something at the heart of a trial court's discretion. But that can be a legal standard or it can be a mantra. In this case, we told the trial judge that it was going to be an extreme hardship and extremely cumbersome if a trust was not a judgment debtor with going businesses, people to support, and legal fees to pay, had all of its assets frozen. The judge said, well, it seems to me the hardships tip. That's not the standard. But what has actually happened is we are now in a position where the trust can't even pay its legal fees. And I have had to withdraw because I haven't been paid in three months. No, that matter is not before us. That matter is before the district court. My understanding is you were withdrawing in part because of that and also because of philosophical differences for your client is what I understand the motion to be based on. Well, the problem is... Am I mistaken in my understanding? We're not asking you to... Am I mistaken in my understanding? I'm sorry? Am I mistaken in my understanding for the reasons for your motion? I think that Your Honor is not focusing on the point that I'm trying to make. I asked a question, Mr. Chodos. You have 53 seconds. Perhaps I didn't hear you. Am I mistaken as to the basis of your motion to withdraw? You understand one of the reasons cited is financial difficulties. The other one has to do with the philosophical differences between yourself and your client as to the approach to be taken in the case. I have mentioned some philosophical differences, but the basic problem is that I haven't been paid and can't be paid. So the answer to my question is yes or no? Well, partly yes. Okay. But the point that I want to make to Your Honors is that if the preliminary injunction prevents the defendant from paying me or any lawyer, basically they have asked the judge to hold the defendants down while they beat them up. You can't do that. I know that you're not going to abandon your client, Mr. Chodos. I have every confidence in you. Well, I don't abandon my clients, but the point is... But that's a matter for the district court to deal with. But if my clients can't pay me and they can't pay anybody, they can't defend. And an injunction cannot operate to prevent a litigant from defending. This is a matter for the district court to deal with. You have not been relieved as counsel. You have merely requested. And this is something that the district court, if there's unhappiness with that ruling, I'm sure you'll be back. Okay. Thank you. Thank you. The case of Sargi will stand submitted. We will next hear oral argument in.
judges: D. Nelson, Kozinski, Rawlinson